UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RE-SOURCE AMERICA, INC.,

Plaintiff,

DECISION AND ORDER

-v-

CORNING INCORPORATED,                                07-CV-6048 CJS

Defendants.

**APPEARANCES**

For Plaintiff:              Stephen P. Pazan, Esq.
                           Spector Gadon & Rosen, P.C.
                           1000 Leona Road, Suite 202
                           Morristown, New Jersey 08057

For Defendant:             Richard A. McGuirk, Esq.
                           Marisa J. Miller, Esq.
                           Nixon Peabody LLP
                           1100 Clinton Square
                           Rochester, New York 14604-1792

**INTRODUCTION**

This action arises from the termination of a business relationship between defendant

Corning, Inc. ("Defendant"), a manufacturer of optical fiber and cable, and plaintiff Re-

source America, Inc. ("Plaintiff"), a company which  recycles packaging and shipping

materials.  Now before the Court is Defendant's motion [#41] to dismiss portions of

Plaintiff's Second Amended Complaint [#39], and Plaintiff's cross-motion to file the Second

Amended Complaint *nunc pro tunc*, and to file a Third-Amended Complaint [#46].  For the

reasons that follow, the Court denies Defendant's application to dismiss and grants Plaintiff's application to file its Third Amended Complaint.

## BACKGROUND

Unless otherwise noted, the following background facts are taken from Plaintiff's First Amended Complaint [#16-8].   This action arises from a business relationship that existed between the parties, during the period 1993 through May 31, 2006.   At all relevant times, Defendant manufactured optical fiber cable, which it packaged on spools or in other types of packaging that could be recycled and reused.   In or about 1993, Plaintiff developed a patented system for recycling such packaging materials.   Subsequently, the parties discussed forming a business relationship, in which Defendant would essentially purchase recycled packaging materials from Plaintiff.   In 1994 Plaintiff opened a facility in North Carolina to recover and refurbish packaging materials at Defendant's Wilmington, N.C. plant.   Plaintiff subsequently opened similar facilities in the United Kingdom and in Germany to serve Defendant's manufacturing operations in those locations.

In August 2000, the parties executed their only written agreement, covering the period August 1, 2000 through July 31, 2003.   Significantly, the agreement contained a New York forum- selection and choice-of-law provision. (Agreement ¶ 14).   Following the expiration of the written agreement[1], the parties continued to do business on essentially the same terms contained in the written contract.

---

[1]The parties agree that the written agreement was subsequently extended through December 31, 2003.

Toward the end of 2001, the worldwide market for Defendant's product declined sharply, which threatened to cause Plaintiff "serious operating losses."(Amended Complaint [#16-8] ¶ 55). In response, the parties orally agreed that Defendant would advance payments to Plaintiff, which Plaintiff would repay once the market for optical fiber rebounded. According to Plaintiff, the parties agreed that once the market improved, Plaintiff could repay the debt incrementally, and that Defendant would buy enough of Plaintiff's product so that Plaintiff would be able to pay off the advances and be profitable. (*Id.* at ¶ 58).

In 2004 consumer demand for Defendant's fiber cable resumed, and Defendant sought repayment of the advanced monies. However, according to Plaintiff, Defendant reneged on its promise to allow Plaintiff to repay the advanced monies gradually. Instead, Plaintiff alleges, Defendant withheld payments on work Plaintiff performed until Plaintiff agreed to an accelerated repayment schedule. Additionally, Defendant unilaterally demanded 13% interest on the advances. To soften the blow, Plaintiff contends, Defendant led Plaintiff to believe that the parties' business relationship would continue after the monies were repaid. However, Plaintiff maintains that Defendant had already decided to terminate its relationship with Plaintiff, and that the promise of future business was a ploy designed to ensure that Plaintiff would repay its debt. Relying on Defendant's representations, Plaintiff agreed to the accelerated payments, and repaid the entire amount in late 2005. Then, almost immediately thereafter, Defendant notified Plaintiff that it was terminating the parties' business relationship, effective May 31, 2006.

On July 28, 2006, Plaintiff commenced the subject action in the United States District Court for the District of New Jersey.  On September 5, 2006, Plaintiff filed an Amended Complaint [#16-8].[2]  The Amended Complaint purported to state three separate causes of action.  The first was for breach of the written contract, in which Plaintiff sought to recover costs associated with a decline in the demand for Defendant's cable and the subsequent closing of Plaintiff's operations in Europe.  The second claim was for "fraud in the inducement, misrepresentation and breach of oral contract," in which Plaintiff alleged that Defendant improperly "imposed a 13% self-proclaimed 'interest' penalty" on the monies that it advanced to Plaintiff between 2001 and 2004.

The third claim of the Amended Complaint, entitled "bad faith and intentional business torts," alleged, essentially, that between 2004 and 2006, Defendant orally misled Plaintiff into believing that the parties' business relationship would continue indefinitely, even though Defendant actually intended to terminate the relationship once Plaintiff repaid the advances.  With regard to Corning's alleged oral misrepresentations, Plaintiff maintained, in relevant part:

> [Plaintiff] was justifiably led to believe and did reasonably [sic] that it would enjoy an ongoing relationship with Corning after repayment and into the foreseeable future. . . .
> 
> ***
> 
> [I]n reliance on Corning's promise of a continuing relationship, [Plaintiff] elected not to pursue Corning [for monies that Plaintiff believed it was owed under the written contract]. [Plaintiff's] forbearance was in exchange for warranties and promises of a relationship with Corning that would continue beyond the period of the prepaid losses.

---

[2]Subject matter jurisdiction is premised on diversity jurisdiction, with Plaintiff being a Pennsylvania corporation with its principal place of business in New Jersey, and Defendant being a New York Corporation with its principal place of business in New York.

***

Corning's promise of future business . . . was a ruse designed to elicit [Plaintiff's] compliance with Corning's dictates, and to recover the prepaid balance prior to terminating the relationship.

***

Nonetheless, in August 2005, in order to hasten the payment of the prepaid balance and to further induce [Plaintiff] into thinking it had an open ended contract with Corning, Corning's Dale Dykhuizen and Mike Hannan misrepresented to [Plaintiff] that Corning was 'very pleased' with [Plaintiff's] progress on the repayment, and that they looked forward to price concessions from [Plaintiff] for 2006 in anticipation of growing volume.

(Amended Complaint [#16-8] ¶ ¶ 71-74). Also as part of the third cause of action, Plaintiff alleged that Defendant gave insufficient notice (60 days) of its intent to terminate the relationship, and that Defendant's actions, in that regard, caused the demise of Plaintiff's business. As for damages under the third cause of action, Plaintiff contended that it was entitled to "'expectation damages' in the form of lost profits that would have been enjoyed by [Plaintiff] had the relationship continued." (*Id*. at p. 14).

Defendant moved to dismiss or transfer the action pursuant to 28 U.S.C. § 1404(a), and the New Jersey District Court transferred the action to the United States District Court for the Western District of New York. In that regard, the New Jersey District Court found that Plaintiff's contract claims should be transferred, since "the choice of law and forum clause clearly provides that disputes relating to the agreement are governed by New York law." (McGuirk Aff. Ex. 3, pp. 9-10). The New Jersey District Court further found that Plaintiff's "business torts" claim should be transferred, since it too arose out the parties' contract. (*Id*. at 11). Accordingly, the New Jersey District Court transferred the case to this District.

5

The undersigned referred all non-dispositive pretrial matters in the case to the Honorable Jonathan W. Feldman, United States Magistrate Judge.  On April 4, 2007, Magistrate Judge Feldman issued a Scheduling Order [#28], which, *inter alia*, directed that "[a]ll motions . . . to amend the pleadings shall be filed on or before May 1, 2007." Magistrate Judge Feldman's Order further stated that "[n]o extension of the above cutoff dates will be granted except upon written application, made <u>prior to the cutoff date</u>, showing good cause for the extension." (Emphasis in original).

On April 5, 2007, Defendant filed a motion [#30] for partial judgment on the pleadings as to Plaintiff's third cause of action for "business torts."  Defendant contended that the "business torts" cause of action failed to state a claim for either prima facie tort, breach of contract, or fraud.  In opposition, Plaintiff maintained that the third cause of action properly stated a claim.  Plaintiff did not seek leave to amend the complaint, but stated that it was "prepared to replead if the Court order[ed] it to do so." (Document [#32] at 13).

The Court agreed with Defendant, and dismissed the third cause of action without prejudice, and with permission to Plaintiff to re-plead that cause of action.  Specifically, in its Decision and Order [#37] filed on September 26, 2007, the Court stated, in relevant part:

> In support of its claim, Plaintiff alleges that Defendant: 1) falsely created the impression that it would continue to use Plaintiff's services into the foreseeable future, in order to get Plaintiff to repay the monies which Defendant had advanced pursuant to the parties' oral agreement; and 2) gave insufficient notice of its intention to terminate the business relationship. Plaintiff indicates that Defendant breached a duty of good faith in this regard, since it knew that the arrangement concerning prepaid advances would not

6

truly "profit" Plaintiff unless the parties continued their relationship for a long time after the market had rebounded and the advances were repaid. (Amended Complaint ¶ ¶ 58-59, 71) According to Plaintiff, it has pled a claim for breach of contract, or alternatively, a claim for a breach of duty separate from a contract.  The Court, however, concludes otherwise.

Based upon the applicable principles of law, the Court finds that Plaintiff has not pleaded a breach of contract claim, nor any tort claim that is cognizable under New York law.  Although Plaintiff suggests that it has pleaded a claim for equitable estoppel (Pl. Memo of Law p. 7, n. 4), the Court disagrees.  On this point, it is well settled that "[a] cause of action for promissory estoppel under New York law requires the plaintiff to prove three elements: 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000) (citation omitted).  The types of statements upon which Plaintiff relies here do not constitute a clear and unambiguous promise. *See, Henneberry v. Sumitomo Corp. of America,* No. 04 Civ. 2128(PKL), 2007 WL 2068346 at *9  (S.D.N.Y. Jul. 12, 2007) (citing *Esquire Radio & Elecs., Inc. v. Montgomery Ward & Co., Inc.*, 804 F.2d 787, 793 (2d Cir.1986)) ("[A]bsent a distinct communication to be bound, a statement by one party to another that evinces the speaker's desire to consummate or further a commercial transaction does not generally constitute a clear and unambiguous promise.  Statements such as " 'we're partners' " and " 'we look forward to growing together,' " when made by experienced negotiators in the course of a collective bargaining agreement negotiation, are not clear and unambiguous promises to renew the subject agreement.") (citations omitted)  Consequently, Defendant's application to dismiss Plaintiff's third cause of action is granted.

However, it is well settled that "dismissals for insufficient pleadings are ordinarily with leave to replead." *Stern v. General Elec. Co.*, 924 F.2d 472, 477 (2d Cir. 1991) (citation omitted); *see also*, *Porat v. Lincoln Towers Community Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) ("Without doubt, this circuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6).") Therefore, Plaintiff is granted an opportunity to re-plead the third cause of action.

\*\*\*

Accordingly,  Defendant's motion [#30] is granted without prejudice, and Plaintiff may file an amended pleading within 30 days of the date of entry of this Decision and Order.

(Decision and Order [#37] at 6-8).

On September 6, 2007, unbeknownst to the Court and prior to the issuance of the aforementioned Decision and Order, Defendant served a Response to Plaintiff's First Set of Interrogatories. (Document [#41-3], McGuirk Aff. Ex. 2).   Based upon Defendant's responses, Plaintiff made certain amendments to the complaint, beyond that authorized by the Court in its Decision and Order [#37].   However, following the issuance of that Decision and Order, Plaintiff never notified the Court that Defendant's interrogatory responses warranted a further amendment of the complaint, nor did it request any modification of the Decision and Order.

On October 24, 2007, Plaintiff filed its Second Amended Complaint [#39], which, as already mentioned, went beyond merely re-pleading the third cause of action.   For example, whereas the Amended Complaint had alleged that the parties' written agreement "was not renewed at the time of its expiration," the Second Amended Complaint alleged that the agreement "was renewed at the time of its expiration." (Compare, Amended Complaint ¶ 30 with Second Amended Complaint ¶ 31).   Additionally, Plaintiff re-named and significantly changed the second cause of action.   For example, whereas the claim had previously "alleged that Defendant improperly "imposed a 13% self-proclaimed 'interest' penalty" on monies which it had advanced to Plaintiff between 2001 and 2004," the new claim added allegations that Corning had, in bad faith, refused to consider or implement a new recycling process that Plaintiff had developed, thereby violating a "promise" that it would "conduct a good faith engineering review" of the new process. (Second Amended Complaint ¶ 71).   Plaintiff further added allegations that a Corning employee, who was motived by "careerism," "cast aspersions" on Plaintiff, thereby causing Defendant to cease

doing business with Plaintiff. (*Id*. at ¶ ¶ 75-76).  However, the most striking addition to the second cause of action was a new allegation, that Defendant made "an explicit promise of good faith negotiations toward a normal continued business relationship, which negotiations were to take place upon satisfaction of the pre-paid balance." (*Id*. at ¶ 76). According to Plaintiff, Defendant used this "explicit promise" to lure Plaintiff into agreeing to an accelerated re-payment of amounts advanced by Defendant, even though Defendant had no intention of continuing to do business with Plaintiff once those amounts were repaid. (*Id*. at ¶ ¶ 79-81).  Also, in addition to seeking recovery of interest that Defendant alleged charged unfairly, Plaintiff added a demand for "recovery of lost profits" that it would have earned had Defendant implemented Plaintiff's new recycling process. (*Id*. at p. 15).

Additionally in the Second Amended Complaint, Plaintiff amended the third cause of action, by adding allegations that Defendant had falsely "promise[d to engage in] fair negotiations towards future business," in order to cause Plaintiff to agree to the accelerated repayment of the advanced monies. (*Id*. at ¶ 91).  That is, the Second Amended Complaint's third cause of action alleged that, in order to lure Plaintiff into an accelerated repayment plan, Defendant made express and implied promises that, upon repayment of the advanced monies, there would be "good-faith negotiations . . . and continued business relationships into the foreseeable future, and that the resumption of worldwide demand for optical fiber would one day reap for [Plaintiff] a profit from Corning business." (*Id*. at ¶ 88). The claim further alleged that by doing so, Defendant "breached implied and express covenants of good faith and fair dealing that existed in the written and oral contracts and

9

in the executory contracts" between the parties. (*Id*. at ¶ 97).   As for damages, the third claim requested "expectation damages or lost profits that would have been enjoyed by [Plaintiff] had the relationship continued." (*Id*. at p. 17).

In response, Defendant filed the subject motion [#41] to dismiss portions of the Second Amended Complaint, and specifically, "dismissing Count III . . . and dismissing the amendments to Count II" with prejudice." (Notice of Motion [#41]).   With regard to the second cause of action, Defendant contends that the amendments "should be dismissed as an improper, unauthorized amendment to the pleadings and because the newly added claim fails to state an actionable claim upon which relief may be granted. (*Id*.; see also, Def. Memo of Law [#41-4] at 2: "Plaintiff's new Count II should be rejected because Plaintiff failed to comply with Rule 15(a) of the Federal Rules of Civil Procedure, and substantively because the new Count II does not state a valid claim for relief to the extent it seeks lost profits.").   Specifically as to the alleged substantive deficiencies of the claim, Defendant maintains that the claim fails to plead that there was an agreement to negotiate in good faith, since it does not plead the terms of such an agreement, and because, in any event, such agreements are disfavored under New York law, except where the parties have already agreed to the essential terms of a contract.   Further, Defendant maintains that even if there were such an agreement to negotiate in good faith, that Plaintiff's damages would be limited to reliance damages, not lost profits.

As for the third cause of action, Defendant contends that it is "substantively identical to the claim" the Court dismissed previously, and still fails to state a claim upon which relief can be granted. (Notice of Motion [#41]; see also, Def. Memo of Law [#41-4]

10

at 2: "Although granted leave to replead, Plaintiff's allegations in Count III of its Second Amended Complaint remain almost exactly the same .  Plaintiff continues to argue that Corning created the false impression that it would negotiate in good faith, and that the relationship between the parties would last into the foreseeable future, and for which Plaintiff is entitled to lost profits damages. . . . [However], those allegations fail to make out a viable claim.").  Specifically, Defendant contends that the claim still lacks allegations of any specific promise by Defendant that it would negotiate in good faith, or that the parties' business relationship would continue indefinitely.

Plaintiff responded to Defendant's motion to dismiss by bringing the subject cross-motion [#46] for leave to file the Second Amended Complaint *nunc pro tunc*, and for leave to file a Third Amended Complaint.  The proposed Third Amended Complaint is essentially identical to the Second Amended Complaint, except for certain changes to paragraphs 31 and 32.[3]  With regard to the procedural aspect of its cross-motion to amend , Plaintiff contends that the proposed amendments are necessary, based on discovery that it has received from Defendant.  For example, Plaintiff contends that such discovery shows that the oral agreement regarding advances is "inextricably intertwined" with the parties' written agreement. Plaintiff also suggests that it has the right to amend, since "the Federal Rules permit liberal amendment of the complaint to accord with the interest of justice." (Def. Memo of Law  [#48] at 1).  With regard to the Second Amended Complaint, Plaintiff also contends that such amendment was proper, since there was "some ambiguity" in the

---

[3]In paragraphs 31 and 32, Plaintiff now alleges that the parties' written agreement was "renewed for only a few months at the time of its expiration," but that the parties "remain[ed] subject to various duties under the Agreement."

Court's Decision and Order, regarding the scope of the amendment that the Court was allowing. (*Id*. at 3).

As for the substantive sufficiency of the proposed amendments, Plaintiff contends that it has now "satisfactorily alleged . . . that Corning, in the context of the oral contract relating to the pre-paid balance, promised that it would negotiate in good faith for a continuation of the [parties'] relationship, provided that [Plaintiff] could deliver a reasonable market price." (*Id*. at 8-9). Plaintiff argues that such an alleged promise is sufficient when pleading a cause of action for promissory estoppel. Plaintiff also maintains that it has pleaded a claim for breach of oral contract arising from the same promise. Specifically, in response to Defendant's contention to the contrary, Plaintiff states that, "[i]n New York, a promise to negotiate, without more, is indeed enforceable." (*Id*. at 9).

## DISCUSSION

### *The Rule 15 Standard*

When Plaintiff filed its Second Amended Complaint,[4] Federal Rule of Civil Procedure 15(a) stated, in relevant part, that

> [a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

---

[4]The rule was amended effective December 1, 2007, however, the relevant portion of the rule is essentially unchanged.

FRCP 15.  As the rule indicates,  "[l]eave to file an amended complaint shall be freely given when justice so requires, Fed.R.Civ.P. 15(a), and should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp*.  244 F.3d 104, 110 (2d Cir. 2001) (*quoting Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); internal quotation marks omitted).

Although motions to amend pleadings are generally governed by Rule 15(a), where a party seeks to amend his pleading beyond the deadline set by the court in a scheduling order, the liberal standard set forth above does not apply.  Instead, the moving party must establish "good cause":

> [D]espite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause. Moreover, . . . a finding of "good cause" depends on the diligence of the moving party.

*Parker v. Columbia Pictures Industries*, 204 F.3d 326, 340 (2d Cir. 2000).  As the Circuit Court noted in the *Parker* decision, allowing pleadings to be amended past the court-ordered deadline without a showing of good cause "would render scheduling orders meaningless.") *Id*. (*quoting Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir.1998)).

### The Rule 12(b) Standard

Recently, the U.S. Supreme Court, in *Bell Atl. Corp. v. Twombly*, No. 05-1126,  — U.S. —, 127 S.Ct. 1955 (May 21, 2007), clarified the standard to be applied to a 12(b)(6) motion:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order

13

to give the defendant fair notice of what the claim is and the grounds upon
which it rests. While a complaint attacked by a Rule 12(b)(6) motion to
dismiss does not need detailed factual allegations, a plaintiff's obligation to
provide the grounds of his entitlement to relief requires more than labels and
conclusions, and a formulaic recitation of the elements of a cause of action
will not do.  Factual allegations must be enough to raise a right to relief
above the speculative level, on the assumption that all the allegations in the
complaint are true (even if doubtful in fact).

*Id*. at 1964-65 (citations and internal quotations omitted).  See also, *ATSI Communications,
Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff
must provide the grounds upon which his claim rests through factual allegations sufficient
'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*)
(footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (Indicating that *Bell
Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to
amplify a claim with some factual allegations in those contexts where such amplification
is needed to render the claim plausible[,]" as opposed to merely conceivable.)   When
applying this standard, a district court must accept the allegations contained in the
complaint as true and draw all reasonable inferences in favor of the nonmoving party.
*Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).

Based upon the applicable principles of law, the Court finds, at the outset, that the
filing of the Second Amended Complaint was improper, because it was not done on motion
as required by Rule 15, and because it did not comply with this Court's Decision and Order
[#37] or Magistrate Judge Feldman's Scheduling Order.   Nevertheless, the Second
Amended complaint is moot in light of Plaintiff's cross-motion to file the proposed Third
Amended Complaint.  Consequently, Defendant's application to dismiss portions of the

14

Second Amended Complaint, and Plaintiff's request to file the Second Amended Complaint *nunc pro tunc*, are both denied as moot.

Turning to the proposed Third Amended Complaint, the Court finds, first, that Plaintiff has shown good cause for seeking leave to amend the complaint beyond the deadline set by Magistrate Judge Feldman. Specifically, Plaintiff has received new information from Defendant through discovery. Additionally, the Court finds that Defendant will not be prejudiced by the amendment.

Nevertheless, Defendant contends that amendment would be futile, since the proposed amendments fail to state a claim upon which relief can be granted. To the extent that Plaintiff is attempting to allege a breach of contract, based on Defendant's refusal to negotiate future business dealings with Plaintiff, the Court agrees with Defendant. Specifically, the Court finds that under the law of New York State, which is applicable in this case, the alleged agreement to negotiate in good faith at a later time, as alleged here by Plaintiff, is not sufficiently definite to be enforced as a contract. *Candid Prods., Inc. v. International Skating Union*, 530 F.Supp. 1330, 1336 (S.D.N.Y. 1982) (Weinfeld, J.) ("The Court finds persuasive the reasoning from the established line of cases that in ordinary commercial situations 'a mere agreement to agree' is unenforceable for indefiniteness where material terms are left open for future resolution. The principles inherent in such cases apply here with added force for not only one item but all terms have been left open for future negotiation. Further, unlike 'agreements to agree' the parties here have not even committed themselves to contract; they have only agreed to negotiate. Thus, as is the case with 'agreements to agree' where a material term is left open, the promise is unenforceable

15

for it fails to show that the parties assented to the same obligation."); *see also, McGee & Gelman v. Park View Equities, Inc.*, 187 A.D.2d 1012, 1013, 591 N.Y.S.2d 656 (4th Dept. 1992) (Holding that "[a] promise to negotiate in good faith is a mere promise to agree," which is not actionable as a breach of contract.) (*citing Candid Prods. v. International Skating Union*); *Lopez Del Castillo v. Bayley Seton Hosp.*, 232 A.D.2d 602, 604, 649 N.Y.S.2d 41 (2d Dept. 1996) (*also citing Candid Prods. v. International Skating Union*).

However, to the extent that Plaintiff is attempting to allege an equitable claim for promissory estoppel based on the same promises, the Court finds that the proposed complaint satisfies Rule 12(b)(6).   In that regard, Plaintiff has remedied the pleading deficiencies identified in the Court's prior Decision and Order [#37], by alleging that Defendant made certain "clear and unambiguous promises," upon which Plaintiff reasonably relied, to its detriment.  For example, Plaintiff alleges that Defendant falsely "promise[d] that it would conduct a good faith engineering review" of a new recycling process, and that in reliance on that promise, Plaintiff developed the process "at considerable expense." (Third Amended Complaint ¶ 71).  Further, Plaintiff alleges that Defendant falsely made "an explicit promise of good faith negotiations toward a normal continued business relationship, which negotiations were to take place upon satisfaction of the pre-paid balance" on an accelerated basis, and that in reliance on that promise, Plaintiff made the accelerated payments, to its detriment. *See*, *Kaye v. Grossman*, 202 F.3d at 615 ("A cause of action for promissory estoppel under New York law requires the plaintiff to prove three elements: 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the

16

reliance.") (citation omitted); *see also, Scher v. Llorente*, No. 92 Civ. 5206 (MBM), 1993 WL 426840 at *3 (S.D.N.Y. Oct. 22, 1993) ("[The] independent cause of action for promissory estoppel does not depend on the existence of an enforceable contract.") (citations omitted).  Finally, Defendant asks the Court to rule, as a matter of law, that Plaintiff may not recover "lost profits" on such a claim.  However, although Defendant may ultimately prevail on that point, the Court declines to dismiss Plaintiff's demand for lost-profit damages at this stage of the litigation. *See, Arcadian Phosphates, Inc. V. Arcardian Corp.*, 884 F.2d 69, 73 (2d Cir. 1989) ("Prevailing on a promissory estoppel claim, however, *sometimes* entitles a party only to its out-of-pocket expenses, rather than to benefit-of-the-bargain damages.") (emphasis added); *see also, Id*. at n. 2.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss [#41] is denied, and Plaintiff's cross-motion [#46] is granted to the extent that it seeks leave to file the Third Amended Complaint.  Defendant is directed to answer the Third Amended Complaint.

SO ORDERED.

Dated:       March 26, 2008
             Rochester, New York

                              ENTER:


                               /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Judge